Juan Carlos MARINES, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–06–00738–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 28, 2008.

Discretionary Review Refused
June 25, 2008.

Cristobal Miguel Galindo, Timothy A. Hootman, Houston, for appellant.

Jessica Akins McDonald, Houston, for appellee.

Panel consists of Justices FOWLER, FROST, and SEYMORE.

## MEMORANDUM OPINION

WANDA McKEE FOWLER, Justice.

Appellant, Juan Carlos Marines, was indicted on the offense of murder. The jury returned a guilty verdict, and the trial

court sentenced appellant to forty-five years' confinement in the Texas Department of Criminal Justice, Institutional Division, and a $10,000 fine. Appellant then filed a motion for a new trial based on "newly-discovered evidence," which the trial court denied. In three issues, appellant appeals his conviction and the denial of his motion for a new trial, claiming (1) the evidence is legally insufficient to support his conviction; (2) the evidence is factually insufficient to support his conviction; and (3) the trial court erred in denying his motion for a new trial, as the evidence discovered and presented in his motion was not known at the time of trial. Finding no error in the trial court's judgment, we affirm.

**Factual and Procedural Background**

On April 30, 2005, shortly after 2:00 a.m., a fight broke out in the parking lot of Slick Willie's, a pool hall located just south of downtown Houston. Involved in this fight were numerous individuals, including, among others, appellant and Alejandro German, the complainant. Sometime during the fight, at least two individuals in a dark-colored Ford F–150 truck drove across the parking lot of the pool hall, and multiple shots were fired from its passenger-side window. The complainant was struck three times, and died at the scene.

Officer J.C. Bonaby, an investigator with the Houston Police Department homicide division, was assigned to investigate the incident. Witnesses at the scene made conflicting statements to Bonaby and other investigating officers: several reported that the shooter was a Hispanic male with dark hair, while another indicated that there were two shooters. Still another reported that, while he was unsure, there may have been four individuals in the F–150. At least three witnesses told Bonaby that they had seen the shooters, but none could provide a complete physical description of the suspects or the license plate number of the F–150.

During his investigation, Bonaby received several anonymous tips, and one from a law enforcement officer. The tips informed Bonaby of the general location of the shooter's residence, as well as his name, address, and that he drove a black Ford pickup truck. Using this information, Bonaby discovered that appellant and his father were the registered owners of a black Ford F–150 truck. Bonaby then created a photo array using appellant's Texas driver's license photograph, and showed the array to two individuals who witnessed the shooting: Raphael Reyes, a brother of the complainant who was also involved in the fight, and Crystal Rocha, the girlfriend of another of Reyes' brothers. According to Bonaby, Reyes identified appellant in the photo array without hesitation in less than two minutes' time. Rocha selected another photo from the array as that of the shooter. Bonaby then obtained an arrest warrant, and arrested appellant. The weapon used to shoot the complainant was never recovered.

Appellant was charged by indictment with the offense of murder. On August 10, 2006, the jury found him guilty as charged. The jury assessed punishment at forty-five years' confinement in the Texas Department of Criminal Justice, Institutional Division, and a $10,000 fine. The trial court sentenced appellant and entered judgment in accordance with the jury's verdict, and appellant timely filed his notice of appeal. Appellant later filed a motion for a new trial based upon "newly-discovered evidence." The trial court denied the motion. This appeal followed.

**Analysis of Appellant's Issues**

**I. The Evidence is Legally Sufficient to Support Appellant's Conviction.**

█ In his first issue, appellant contends that the evidence is legally insufficient to support his conviction. According to him, the evidence indicates that he was not the driver of the F–150 the night of the shooting, and that he was not the shooter. He argues that "newly-discovered" evidence presented in his motion for a new trial[1] demonstrates that Danny Rosales, the passenger in the light blue Dodge truck driven by appellant the night of the shooting, was the shooter, and therefore appellant can only be found guilty under the law of parties,[2] which was neither alleged in the indictment, nor contained in the ·charge. Appellant argues that no rational jury could have possibly convicted him of being the shooter, and thus the evidence is legally insufficient to sustain his conviction.

### A. Standard of Review and Applicable Law.

█ In evaluating the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Vasquez.v. State,* 67 S.W.3d 229, 236 (Tex.Crim.App.2002). We consider all the evidence that sustains conviction, whether properly or improperly admitted or whether introduced by the prosecution or the defense. *Simpson v. State,* 227 S.W.3d 855, 860 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (citing *Conner v. State,* 67 S.W.3d 192, 197 (Tex. Crim.App.2001)). The jury is the exclusive judge of the credibility of witnesses and of the weight to be given to testimony, and it is also the exclusive reconciler of conflicts in the evidence. *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex.Crim.App.2000). When the record supports conflicting inferences, we presume the trier of fact resolved conflicts in favor of the prosecution, and we must defer to that resolution. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim.App.2007). If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *Simpson,* 227 S.W.3d at 860–61 (citing *McDuff v. State,* 939 S.W.2d 607, 614 (Tex.Crim.App.1997)).

### B. Application of Law to the Facts.

█ To obtain a conviction for murder in this case, the State was required to prove beyond a reasonable doubt that appellant (1) intentionally or knowingly

1. In fact, appellant urges this Court to consider the evidence presented in his motion for a new trial in our determination of both legal and factual sufficiency. He asserts that no Texas case has yet directly confronted "this rare situation—i.e., whether the scope of factual sufficiency review includes evidence presented in the motion of new trial record." We *disagree.* Several Texas courts of appeal, including this Court, have squarely addressed this issue, all uniformly holding that an appellate court may not consider evidence presented after the verdict in a factual sufficiency review. *See, e.g., Tucker v. State,* 15 S.W.3d 229, 235 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd); *Blackmon v. State,* 926 S.W.2d 399, 402 (Tex.App.-Waco 1996, pet. ref'd). Moreover, the Texas Court of Criminal Appeals has expressly stated that, in a factual sufficiency review, the appellate court "reviews the evidence weighed by the jury...." *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim. App.2000). The scope of a legal sufficiency review is also limited to only that evidence before the jury. *See Moff v. State,* 131 S.W.3d 485, 488 (Tex.Crim.App.2004). Thus, we will not consider the evidence presented with appellant's motion for a new trial in our determination of legal and factual sufficiency.

2. *See* TEX. PENAL CODE § 7.01(a) ("A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.").

caused the death of the complainant; or (2) intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused the death of the complainant. *See* TEX. PEN.CODE § 19.02(b)(1), (2). Appellant contends that the evidence failed to demonstrate that he was the driver of the F–150 in the Slick Willie's parking lot the night of the shooting, and that he was the shooter. Instead, appellant argues that the evidence shows that the passenger of the light blue Dodge truck driven that night by appellant was the shooter, and therefore appellant cannot be held liable as the principal to the offense.

However, Officer Bonaby testified that witnesses at the scene described the shooter as a Hispanic male with dark hair, driving in a black Ford truck. Bonaby further testified that the multiple tips he received all led him to appellant, and that appellant was the registered owner of a black Ford truck matching the vehicle description from the scene. Moreover, two eyewitnesses, Reyes and Carmello Salinas, Reyes' half-brother, identified appellant as the individual shooting from the passenger side of the black Ford truck in the parking lot of Slick Willie's. Although appellant presented evidence that his father sold the black Ford F–150 truck approximately one month before the date of the shooting, that he had borrowed his brother's light blue Dodge truck that night, and that he was running to that truck when the shooting began, other evidence indicated that the F–150 was still registered in appellant's and his father's name at the time of trial, and two eyewitnesses identified appellant as the shooter. It was the jury's duty to reconcile conflicts in the evidence, and here the jury apparently did so in favor of the prosecution. *See Wesbrook*, 29 S.W.3d at 111; *Clayton*, 235 S.W.3d at 778.

Therefore, in reviewing the evidence in the light most favorable to the prosecution, we cannot say the jury was irrational in finding appellant guilty of murder as charged. We therefore overrule appellant's first issue.

## II. The Evidence is Factually Sufficient to Support Appellant's Conviction.

In his second issue, appellant contends that the evidence is factually insufficient to support his conviction. He argues that the great weight and preponderance of the evidence contradicts a finding of guilt in this case. Appellant further urges this Court to find that the factual insufficiency "rises to such a degree of fundamental unfairness that to refuse to consider the error denies him constitutional due process."

### A. Standard of Review and Applicable Law.

When conducting a factual—sufficiency review, we view all of the evidence in a neutral light. *Garza v. State*, 213 S.W.3d 338, 344 (Tex.Crim.App.2007). We may set the verdict aside if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or (2) the verdict is against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex.Crim. App.2006) (citing *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000)). However, while we may disagree with the jury's conclusions, we must exercise appropriate deference to avoid substituting our judgment for that of the jury, particularly in matters of credibility. *Drichas v. State*, 175 S.W.3d 795, 799 (Tex.Crim.App.2005); *see also Watson*, 204 S.W.3d at 414 (stating that a court should not reverse a verdict it disagrees with unless it represents a manifest injustice even though supported by legally sufficient evidence). Finally, we must discuss the evidence that, according to appellant, most undermines the jury's

verdict. *Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App.2003).

### B. Application of Law to the Facts.

 In his brief, appellant points out various pieces of evidence that allegedly undermine the verdict, and we address each accordingly.

First, appellant asserts that all of the State's witnesses were too drunk to interview at the scene. He claims that Reyes was too intoxicated the night of the shooting to make a positive identification of appellant at a later date, and the only sober witness of the night positively identified another photograph from the photo array as that of the shooter. Appellant also contends that, because Reyes and appellant were both involved in the fight, Reyes may have had a motive to lie about his identification of appellant. While Officer Bonaby testified on cross-examination that he did not interview Reyes at the scene because Reyes appeared to be intoxicated, and thus could probably not furnish him with accurate information at that time, on redirect examination Bonaby clarified that Reyes also was "emotional," crying, and "basically hysterical" at the scene because his brother had been killed. From his experience, that was not a good time to conduct an on-scene investigation. Furthermore, Reyes testified on direct examination that he only "had a couple of beers" that night, that he was not getting drunk because he was driving, that he got a good "at least a minute look" at the shooter, and that it was appellant shooting the gun from the passenger window of the black truck. Reyes continued, "I could never forget that day, ma'am. Every day I see [the scene] as I go to sleep. I see [appellant's] face. I can't forget it." Moreover, while Rocha did identify a different photograph in the photo array as that of the shooter, on direct examination Salinas, another eyewitness to the shooting, identified appellant as the shooter. Salinas testified that he had "clear vision" of the shooter during the incident, and when asked, "do you see the person who was hanging out of that truck shooting?", Salinas indicated it was appellant.

Next, appellant points to testimony that the parking lot was "very dim," no witnesses ever saw the license plate on the truck, and there was no physical description of the shooter given to police that night. Appellant further directs our attention to the fact that "[n]o weapons, truck keys, the truck, fingerprints, or any other evidence" implicating appellant as the shooter was ever located, and that appellant's black truck was sold before the shooting. While Robert Gutierrez, the crime scene investigator, testified on direct examination that the parking lot was "very dim," on cross-examination he explained, "the lighting was dim, but you could still see," and on redirect examination he clarified, "dim lighting to me means that there's enough light to see by but, you know, maybe not enough light to properly read a book because it would hurt your eyes, not that you couldn't read it but it's not the proper lighting conditions or optimal lighting," and that "[e]ven a very well-lit parking lot would have to have lots of lights for me to consider it not dim." Furthermore, Reyes testified that the lights in the parking lot "brighten up pretty bright out there," and that it was light enough to see, while Salinas testified that the light poles outside Slick Willie's "actually brighten up the parking lot," "it's real easy to see everything," "[t]here's a lot of light in front," and that there was "plenty of light."

Moreover, although appellant claims that the investigators' failure at the scene to get a license plate number and physical description of the shooter undermines the verdict, Bonaby testified that by "[t]alking

to several different people we were able to piece together a description of the vehicle [and] a description of the possible suspect." Bonaby conceded that the physical description of the shooter he got at the scene was "Hispanic male, dark hair," but also stated that every bit of evidence does not come at the crime scene, and that a suspect is generally developed using evidence that comes in piecemeal. Bonaby also testified that he was not surprised he did not find the gun used in the shooting, "[b]ecause my experience tells me I would not find a weapon that was used in a violent crime at the location if the defendant had any smarts."

Finally, appellant points out alleged inconsistencies between the statements of Officer Brian Bueno, an off-duty Houston police officer working security at Slick Willie's the night of the shooting, who testified that he saw the truck "burn out" after the shooting stopped, and Reyes, who testified the truck was driven slowly, and even stopped, as the shooting occurred. These statements are not necessarily inconsistent, and even if they were, this is a question of credibility, and the jury has already passed on the evidence. *See Johnson*, 23 S.W.3d at 7–9; *Fuentes v. State*, 991 S.W.2d 267, 272 (Tex.Crim.App.1999) ("[T]o avoid intruding on the jury's role as arbiter of the weight and credibility of the evidence, a factual sufficiency review remains deferential to the jury's verdict.").

In reviewing the entire record in a neutral light, we cannot objectively conclude that the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or that the verdict is against the great weight and preponderance of the evidence. The physical description of the shooter given to officers at the scene is consistent with that of appellant. Witnesses reported that the shooter fired from the passenger window of a black Ford truck; appellant is the registered owner of a black Ford F–150 truck. Two eyewitnesses positively identified appellant as the shooter in the black Ford truck, and the multiple tips received by Officer Bonaby all pointed to appellant as being the shooter. The failure of another eyewitness to identify the photograph of appellant in the photo array as that of the shooter is controverting, but this evidence is not so strong as to render the verdict clearly wrong and manifestly unjust, or against the great weight and preponderance of the evidence. Similarly, the evidence presented by appellant regarding the quality of lighting at the scene, the inability of witnesses to provide a full physical description of the shooter or the license plate number of the truck, the failure of investigators to recover the gun used in the shooting, and the allegedly inconsistent statements made by Officer Bueno and Reyes, does not render the verdict clearly wrong and manifestly unjust, or against the great weight and preponderance of the evidence. We therefore overrule appellant's second issue.

## III. The Trial Court Did Not Err in Denying Appellant's Motion for a New Trial.

In his final issue, appellant contends that the trial court erred in denying his motion for a new trial based on "newly-discovered evidence." [3] Appellant asserts

---

3. In his brief, appellant also contends that the trial court erred in denying his motion for a new trial because the evidence is insufficient to sustain the verdict. However, at trial, the sole basis of appellant's motion for a new trial was "newly-discovered evidence." Because appellant failed to raise the issue of sufficien-

cy of evidence in either his motion for a new trial or during the hearing on that motion, the argument is waived, and we need not address it here. Tex.R.App. P. 33.1(a); *see Broxton v. State*, 909 S.W.2d 912, 918 (Tex.Crim.App. 1995) (stating the point of error on appeal must correspond to the objection made at

that no witness, himself included, nor his attorney knew that Rosales, whom he alleges was the passenger in the light blue Dodge truck driven by appellant the night of the shooting, was the shooter of a .40 caliber Glock, the type of weapon used to shoot the complainant.[4] Appellant argues that this evidence only became known and available after his conviction, when Rosales confessed to several individuals that he was the shooter. Appellant concedes that he knew Rosales fired "some unknown" gun out of the passenger-side window of the truck, but that he did not know that this weapon was a .40 caliber Glock, which he alleges was the murder weapon. Appellant attempts to draw this distinction, and urges this Court to therefore find that the trial court abused its discretion in denying his motion for a new trial based on this "newly-discovered" evidence.

### A. Standard of Review and Applicable Law.

We review a trial court's ruling on a motion for a new trial for an abuse of discretion. *Keeter v. State*, 74 S.W.3d 31, 37 (Tex.Crim.App.2002). The trial court abuses its discretion in denying a motion for a new trial based upon newly-discovered evidence when the record shows (1) the newly-discovered evidence was unknown or unavailable to the movant at the time of his trial; (2) the movant's failure to discover or obtain the evidence was not due to a lack of diligence; (3) the new evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result on another trial. *Id.* at 36–37; *Boyett v. State*, 692 S.W.2d 512, 516 (Tex.Crim.App.1985). Motions for new trial on grounds of newly-discovered evidence are disfavored by courts and viewed with great caution. *Margraves v. State*, 56 S.W.3d 673, 685 (Tex.App.-Houston [14th Dist.] 2001, no pet.). A new trial is never allowed for the purpose of obtaining evidence that was known and accessible to the defendant at the time the cause was tried, even if the defendant had knowledge of the evidence but failed to communicate it to his attorney. *Drew v. State*, 743 S.W.2d 207, 227 n. 14 (Tex.Crim.App.1987).

### B. Application of Law to the Facts.

At the hearing on his motion for a new trial, appellant produced several pieces of what he calls "newly-discovered" evidence[5] in an attempt to prove that he

---

trial); *White v. State*, No. 01–03–00264–CR, 2004 WL 1351420, at *3 (Tex.App.-Houston [1st Dist.] June 17, 2004, no pet.) (mem. op., not designated for publication) ("Because his appellate argument does not comport with the ground raised in his motion for new trial, appellant has waived his legal sufficiency challenge, and we need not address it.").

4. Officer Gutierrez, the crime scene investigator, testified on direct examination that officers recovered eight .40 caliber cartridge casings from the scene, as well as seven bullet fragments. Gutierrez further testified that he could not personally tell whether those bullet fragments were fired from a .40 caliber gun, and that it was up to the firearms lab to make such an identification. There was no evidence presented at either the guilt-innocence or the punishment phase of trial that the murder weapon was a .40 caliber Glock; appellant merely alleges that this was the murder weapon in his motion for a new trial and in his appellate brief.

5. This evidence included affidavits from Priscilla Chavez, Lidya Sapien, Roger Guerra, Monica Marie Villagomez–Marines, Kayleigh Ann Marines, defense attorney Brian Coyne, firearms expert John Greenfield, and appellant. In their affidavits, Priscilla, Monica, Kayleigh, and attorney Coyne aver that Rosales confessed to being the shooter. Greenfield's affidavit was used solely to show that a Glock can fire a .40 caliber bullet, matching the size of the casings found at the scene. Appellant also submitted an audiotape recording made by Kayleigh of a conversation between herself and Rosales occurring approxi-

was merely the driver of the light blue Dodge truck the night of the shooting, and that Rosales was the actual shooter. The trial court reviewed the record, the affidavits, and the audiotape, concluded that the evidence presented by appellant was not newly-discovered, and denied appellant's motion for a new trial. In reviewing this evidence, particularly the affidavits submitted by appellant, we conclude that the trial court did not abuse its discretion in denying appellant's motion for a new trial. At a minimum, appellant failed to meet the first two prongs of the test. *See Ho v. State*, 171 S.W.3d 295, 307 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd) (holding the trial court did not abuse its discretion in denying the appellant's motion for a new trial when he failed to demonstrate that (1) the newly-discovered evidence was unknown or unavailable to him at the time of trial; and (2) his failure to obtain this evidence was not due to a lack of diligence).

From the affidavits, it appears that, at the time of trial, appellant knew that Rosales fired a gun from the passenger window of the truck he was driving the night of the shooting. In his affidavit, Roger avers, "Monica was saying, [Rosales] told [appellant], if things got to [sic] far, [Rosales] would turn himself in." This statement is corroborated by another in Monica's affidavit, wherein she states that, sometime following appellant's trial, she asked Rosales "are you going to turn yourself in like you said?" In her affidavit, Kayleigh, appellant's wife, avers that, on the night of the shooting, she witnessed appellant and Rosales get into the truck, circle the parking lot, and stop "next to this group of guys [with] the passenger window rolled down and Danny stuck his

head and arm out and shot about 9 or 10 times," and that she did not testify to this at trial because appellant "told me he didn't want me testifying because I had just had my baby and he didn't want anything to happen to us (me and my baby)." Finally, in his own affidavit appellant states, "I did not know that Danny Rosales was going to shoot at anyone when we were leaving Slick Willie's." Thus, from these affidavits, it appears that, at the time of trial, appellant knew that Rosales had fired a gun from the passenger window of the truck he was driving the night of the shooting.

Moreover, appellant concedes in his brief that he knew Rosales fired "some unknown" gun out of the passenger-side window of the truck, but that he did not know that this weapon was a .40 caliber Glock. Appellant alleges that a .40 caliber Glock was the murder weapon, and argues that there is a distinction between knowing Rosales fired an unknown gun versus firing a .40 caliber gun. We disagree. Appellant admits he knew Rosales fired a gun from the passenger side of the truck the night of the shooting. It is of no consequence that appellant did not know the particular caliber of the gun allegedly fired by Rosales. Here, the "newly-discovered" evidence offered by appellant does not address relevant facts to which he was not privy at the time of trial. *See Drew*, 743 S.W.2d at 227. Assuming the truth of the statements in the affidavits and in his appellate brief, appellant was certainly aware that Rosales discharged a deadly weapon from the passenger window of the truck the night of the shooting. Thus, this evidence is not newly-discovered for the purposes of a motion for a new trial.

Furthermore, appellant's failure to obtain this evidence was due to a lack of

---

mately one week after appellant's conviction and sentencing. This audiotape purportedly contains an admission by Rosales that he

"fired the Glock" at the complainant the night of the shooting.

diligence. At trial, appellant admittedly knew Rosales fired a gun from the passenger window of the truck the night of the shooting, yet failed to inform either the police or his attorney of this fact, much less call Rosales to testify at trial. Thus, we find that appellant's failure to obtain this evidence was due to lack of diligence. *See Ho,* 171 S.W.3d at 307 (finding that the appellant was on notice of the State's intention to introduce evidence of a murder, and that the appellant did not exercise diligence in procuring the testimony of an alibi witness); *Zamora v. State,* 647 S.W.2d 90, 95 (Tex.App.-San Antonio 1983, no pet.) (finding lack of diligence when appellant knew about witness but chose not to inform attorney); *see also Langley v. State,* No. 14-01-00484-CR, 2002 WL 1041035, at *2 (Tex.App.-Houston [14th Dist.] May 23, 2002, pet. ref'd) (not designated for publication) (finding lack of diligence where appellant took no action in discovering before trial what sort of testimony witness could offer despite knowing witness's identity before trial).

For the foregoing reasons, we conclude that the trial judge did not abuse his discretion in denying appellant's motion for a new trial. At a minimum, appellant has failed to show that this "newly-discovered" evidence was either unknown or unavailable to him at the time of trial, and that the failure to obtain this evidence was not due to a lack of diligence. *See Ho,* 171 S.W.3d at 307; *Zamora,* 647 S.W.2d at 95. We therefore overrule appellant's final issue.

## Conclusion

Finding no error in the trial court's judgment, we affirm.