**Affirmed and Memorandum Opinion filed September 25, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00635-CR

---

**JOEY EDWARDS, Appellant,**

**V.**

**THE STATE OF TEXAS, Appellee.**

**On Appeal from the 179th District Court**
**Harris County**
**Trial Court Cause No. 1207009**

## MEMORANDUM OPINION

Appellant Joey Edwards appeals his jury conviction for aggravated sexual assault. The jury assessed an enhanced sentence of imprisonment for 40 years. We affirm.

### BACKGROUND

Appellant went on a dinner date with a woman — the complainant — he had met earlier that day. The complainant drove both of them to dinner, and after the date, she drove appellant to his car. At some point during the trip to appellant's car, appellant

became sexually aggressive, but complainant responded that, "I'm a lady. I'm not like that." When they arrived at appellant's car, appellant brandished a handgun, forced complainant into the back seat of her own car, held her down, and had sex with her.

During the trial, complainant testified that she often worked and rarely had serious boyfriends: "I don't really date a lot. I work a lot. I'm a workhorse, workaholic type of person. So for me to go out, it's typically casual." Appellant took the stand in his defense, and the following exchange occurred during cross-examination:

Q. This house that you were parked at at this point, whose house is that?
A. George — a friend of mine named George.
Q. George? And where is George at this time?
A. He's in the house?
Q. Who else is in the house?
A. Him and his mother.
Q. Were you living at the house?
A. No, I wasn't living at the house.
Q. You were living at the house on Morrow; isn't that right?
A. Correct.
Q. That's not far from this house here on Paul Quinn, is it?
A. Yes.
Q. In fact, how close is it?
A. About three blocks.
                    *                    *                    *
Q. Who did you live at the house on Morrow with?
A. A friend of mine that me and him, we grew up together. They called him — they called him T, but his name is Kevin, Kevin — I forgot his last name. Kevin something. Me and him grew up together.
Q. So y'all are good friends?
A. Yes.
Q. Same age?
A. No. He was about two years younger than me.
Q. Okay. Close in age?
A. Yes. Grew up right there on that street, on Morrow.
Q. That was his house?
A. That was his grandmother's house.
Q. You rented a place from him?
A. Yes.
Q. You would agree that you never took [the complainant] back to that house; isn't that right?

2

A. That's right.

Q. And Kevin or T is not here to testify today?

A. No, he's not.

[Defense Counsel]: Your Honor, I'm going to object to that. That's implying we have some burden in this case. I object to the prosecution commenting on it.

[The Court]: It's overruled.

Q. And in fact, Mr. Edwards, you would agree that George is not here to testify today; isn't that correct?

A. He's not.

Q. And you would agree that George's mother is not here to testify today; isn't that correct?

A. That's right.

Q. But according to your testimony, they were in the house there when you had sex with [the complainant]; isn't that right?

A. Yes.

The prosecutor made no further mention of the fact that appellant had not called Kevin T, George or George's mother to the stand. He did not ask any more questions about those witnesses, and he did not bring up their absence in his closing statement.

After finding appellant guilty, the jury found two enhancement paragraphs true and assessed punishment at 40 years' imprisonment. Appellant moved for a new trial based on his discovery of complainant's social media postings on Facebook and MySpace in which complainant discussed smoking marijuana and enjoying sex. Appellant argued these postings demonstrated that the complainant had left the jury with a false impression, and that the postings were incompatible with complainant's statement that "I'm a lady. I don't do that." The trial court denied that motion, and this appeal followed. Appellant raises two issues.

## ANALYSIS

### I. New Evidence

With his first issue, appellant argues that complainant's social media postings constitute material evidence favorable to the accused and that, in light of its discovery,

the trial court had no discretion to overrule his motion for new trial. *See* Tex. Code Crim. Proc. 40.001.

We review a trial court's ruling on a motion for a new trial for an abuse of discretion. *Keeter v. State*, 74 S.W.3d 31, 37 (Tex. Crim. App. 2002); *Marines v. State*, 292 S.W.3d 103, 110 (Tex. App.—Houston [14th Dist.] 2008, pet ref'd). The trial court abuses its discretion in denying a motion for new trial based upon newly discovered evidence when the record shows (1) the newly discovered evidence was unknown or unavailable to the movant at the time of his trial; (2) the movant's failure to discover or obtain the evidence was not due to a lack of diligence; (3) the new evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result on another trial. *Marines*, 292 S.W.3d at 110. Courts disfavor motions for new trial on grounds of newly discovered evidence, and we view such motions with great caution. *Drew v. State*, 743 S.W.2d 207, 225 (Tex. Crim. App. 1987); *Marines*, 292 S.W.3d at 110. Accordingly, if a defendant fails to establish any one of the four essential elements, a trial court is justified in denying a motion for new trial. *See Shafer v. State*, 82 S.W.3d 553, 556 (Tex. App.— San Antonio 2002, pet ref'd).

Some of the social media postings at issue date back to 2008. Those postings predate not only the original trial, but also the sexual assault itself.[1] Appellant offers no explanation for his failure to discover or obtain these postings prior to the original trial, and he does not allege that these postings were in any way hidden from him at any time. In fact, the complainant testified that all of these postings had been made publicly. Accordingly, we conclude that appellant has failed to demonstrate that a lack of due diligence on the defense's part did not contribute to the failure to discover or obtain complainant's social media postings. *See Delamora v. State*, 128 S.W.3d 344, 355 (Tex. App.—Austin 2004, pet. ref'd) (concluding that defense did not demonstrate due

---

[1] At the September 19, 2011 hearing on the motion for new trial, complainant was asked about her postings on MySpace; she testified that she "hadn't been on MySpace in years."

4

diligence necessary to justify a new trial when evidence sought was in the public record at the time of the trial).[2]

## II. Presumption of Innocence

With his second issue, appellant argues that the trial court erred in overruling appellant's objection to certain questions asked of him. Specifically, appellant asserts that when the State asked him during cross-examination whether certain witnesses would testify in his defense, the State infringed on his presumption of innocence and attempted to shift the burden of proof. This Court previously rejected a contention that alleged burden-shifting statements by the State constituted fundamental error. *See Young v. State*, No. 14-05-01153-CR, 2006 WL 3743080 at *4 (Tex. App.—Houston [14th Dist.] December 21, 2006, pet. struck) (mem. op., not designated for publication). Appellant does not cite, and we have not found, any case that holds questioning of this nature to be erroneous.

Appellant relies on cases addressing improper jury arguments. It is well-established in Texas that a prosecutor makes an improper jury argument by criticizing a defendant's failure to call a witness without first establishing whether the witness is available. *See Albiar v. State*, 739 S.W.2d 360, 362-63 (Tex. Crim. App. 1987) (Failure to call an available witness justifies an inference that the testimony would be unfavorable to the defendant, and a prosecutor may comment on that inference in his jury argument as a "reasonable deduction."); *Lemon v. State*, 298 S.W.3d 705, 707 (Tex. App.—San Antonio 2009, pet. ref'd) (same). The requirement of establishing a witness's availability indicates that questioning regarding the availability of a witness is permissible. Moreover, where, as here, the trial court has properly charged the jury regarding the

---

[2] Because we conclude appellant failed to establish that a lack of diligence did not contribute to the failure to discover or obtain the evidence, we need not analyze the remaining three *Marines* elements necessary to justify a new trial. *See Shafer*, 82 S.W.3d at 556.

presumption of innocence,[3] we cannot say that any error would be harmful. *See Thompson v. State*, No. 14-10-00343-CR, 2011 WL 2176507 at *4 (Tex. App.—Houston [14th Dist.] June 2, 2011, pet. ref'd) (mem. op., not designated for publication).

We conclude that the State's line of questioning did not infringe on appellant's presumption of innocence, and we overrule appellant's second issue.

## CONCLUSION

We hold that the trial court was within its discretion to deny appellant's motion for new trial and that the State's questions at trial did not infringe on appellant's presumption of innocence. Accordingly, we affirm the trial court's judgment.

/s/      William J. Boyce
              Justice

Panel consists of Justices Boyce, McCally, and Mirabal.[4]

Do Not Publish — Tex. R. App. P. 47.2(b).

---

[3] The trial court instructed the jury that "[t]he burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant. . . . All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt . . . . The law does not require a defendant to prove his innocence or produce any evidence at all." The prosecutor repeated these admonishments during his closing argument.

[4] Senior Justice Margaret Garner Mirabal sitting by assignment.