**Affirmed as Modified and Memorandum Opinion filed December 13, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00928-CR

**JIMMY JOE GARCIA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 75459**

## M E M O R A N D U M   O P I N I O N

Appellant Jimmy Joe Garcia was convicted by a jury of aggravated kidnapping. *See* Tex. Penal Code Ann. § 20.04. He appeals his conviction in two issues in which he challenges (1) the sufficiency of the evidence to support his conviction; and (2) the trial court's order directing him to pay attorney's fees. We conclude that there is sufficient evidence to support appellant's conviction. We further conclude that the trial court's order to pay attorney's fees is erroneous. We

modify the judgment to delete the portion that requires appellant to pay attorney's fees, and affirm the judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

At the time of the event in question, the complainant was a daily methamphetamine user. The complainant and her boyfriend bought their methamphetamine from Debra Falco. On the night of the event, appellant, Falco, the complainant's roommate, and the complainant's boyfriend were at the complainant's house smoking methamphetamine. Falco and appellant had driven a rental car to the complainant's house. Falco's car was full of miscellaneous items including boxes, bags, and a weed eater. The complainant drove to Falco's house and offered to put the weed eater in the complainant's truck because Falco was unable to fit the weed eater into her car. The complainant and her boyfriend also wanted to buy more drugs from Falco.

At Falco's house, the complainant purchased $30.00 worth of methamphetamine. After the complainant purchased the drugs, Falco forced the complainant to sign a handwritten document purporting to give the complainant's truck to Falco. Falco claimed that the complainant had stolen money from her, and that title to the truck was repayment for the stolen money. Falco threatened the complainant with an expandable baton. Appellant was also present and threatened the complainant with a handgun. Falco took the complainant's keys and left to move the truck. The complainant felt threatened and tried to leave the house, but the only unlocked door was blocked by appellant.

Falco came back into the house and forced the complainant to take seven unknown pills by threatening her with the baton. Appellant was still threatening the complainant with the handgun. Appellant and Falco then bound the complainant's hands and placed a gag in her mouth. A cover was also placed over the

2

complainant's head. Appellant walked the complainant outside and placed her in the passenger seat of the rental car.

The Lake Jackson Police Department had Falco's house under surveillance the night of the event in question because it was known for narcotics traffic. Lake Jackson patrol officer, Skye Wingo, began following appellant as he drove away from Falco's home, and initiated a traffic stop a short distance away. The complainant heard appellant say he was going to "catch a case" as he pulled the cover off of the complainant's head, and moved the gun from his lap to a space between the console and the driver's seat. Appellant threatened to kill the complainant if she told the police officer about Falco and him. As appellant pulled the car over, he put a plastic bag of methamphetamine in his mouth.

Wingo stepped up to the driver's side window after the car stopped. Wingo noticed appellant, the driver, was extremely nervous, fidgeting, and grinding his teeth. Wingo testified that, in his experience, grinding teeth is indicative of an individual under the influence of a stimulant such as methamphetamine. Wingo recognized the passenger in the car because he had met the complainant during a previous traffic stop outside another house known for narcotics traffic. Wingo asked appellant and the complainant for identification. The complainant was able to respond, but appeared to have something hanging around her neck. Wingo noticed that the complainant appeared extremely intoxicated or sick. Wingo saw a safe under the complainant's feet in the floorboard of the passenger seat. Officers searched the safe, and learned that it contained another handgun, the holder for the baton, duct tape, and ammunition.

After appellant got out of the car, another officer informed Wingo that appellant appeared to be chewing on something, possibly destroying or tampering with evidence. Several police officers tried to get appellant to spit out what he had

3

in his mouth. When they were unsuccessful, they placed appellant in handcuffs. Wingo then walked to the passenger side of the car and asked the complainant to step out. She explained that she could not get out because she was tied. Officer Kristi Carlson stepped in, took the complainant out of the car, and placed a blanket around her. After removing the complainant from the car, Wingo found a handgun and an expandable baton in between the driver's seat and the console.

When Carlson walked up to the passenger side of the car, she saw a jacket over the complainant's hands. When Carlson removed the jacket she saw that the complainant's hands were bound behind her back. Carlson testified that the complainant appeared "terrified." Carlson took the complainant to her patrol unit and asked her what happened. The complainant said she was afraid that appellant would kill her. The complainant also reported that Falco took the complainant's purse, wallet, identification, and truck. She also told Carlson that Falco made her take unknown pills, bound her wrists, and placed a gag in her mouth. The complainant told Carlson that appellant pulled a handgun on her and forced her into the car. The complainant also told Carlson that appellant threatened to kill her as the car was being stopped. When the complainant began to lapse in and out of consciousness, she was taken to a hospital by ambulance.

The complainant testified that she did not consent to being tied up and driven away by appellant. She felt threatened by appellant's display of the handgun and the baton. The complainant's movement was restricted and she was unable to get away from appellant and Falco. On cross-examination, the complainant admitted she and her boyfriend had engaged in "bondage sex," and that she had discussed bondage sex with Falco in the past.

Appellant testified that he is a freelance tattoo artist who went to Lake Jackson to do tattoos. On the day of the event appellant and Falco spent the day

4

"riding around," with Falco shoplifting and appellant sketching tattoo work. Appellant said that he would act as a decoy in stores while Falco shoplifted. That night the complainant, the complainant's roommate, and the complainant's boyfriend came to Falco's house with items they had stolen to exchange for drugs. The group left Falco's house and went to the complainant's house, where they smoked methamphetamine. Appellant testified that the complainant agreed to trade sexual favors for tattoo work. Appellant testified that the complainant asked him to tie her up to have bondage sex. Appellant claimed that he was in Falco's house using more drugs when Falco walked the complainant to the car. Appellant got in the car intending to drive to a park where he planned to "fool around a little bit," then return to the complainant's house and start working on the tattoos. In addition to methamphetamine, appellant took a pill called "RV 5," and used an inhaler called "Rush." Appellant described the RV 5 pill as a sexual stimulant.

Appellant testified he had no knowledge of the items in the safe. Falco put the key to the safe on his keyring as he was leaving Falco's house. Appellant admitted the baton was his, but denied ownership or knowledge of the handgun. According to appellant, he did not know who put the handgun in the driver's seat of the car. Appellant admitted that he had pleaded guilty to aggravated assault with a deadly weapon, and at the time of the kidnapping arrest, appellant was on parole from this charge.

The jury found appellant guilty of aggravated kidnapping and assessed punishment at confinement for forty years in the Institutional Division of the Texas Department of Criminal Justice.

DISCUSSION

**A. The evidence is sufficient to prove that appellant intended to restrain the complainant without her consent.**

In his first issue appellant argues the evidence is insufficient to support the jury's guilty verdict. Appellant argues the jury was not rationally justified in convicting appellant based on the complainant's testimony because the complainant was under the influence of drugs at the time of the events.

When evaluating the legal sufficiency of the evidence, we "consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). Reconciliation of conflicts in the evidence is within the jury's discretion. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). Inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). We do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993); *Tatum v. State*, 431 S.W.3d 839, 841 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

A person commits the offense of aggravated kidnapping "if he intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense." *See* Tex. Penal Code Ann. § 20.04(b). For purposes of chapter 20, "abduct" means to restrain a person with intent to prevent her liberation. Tex. Penal Code Ann. § 20.01(2). "Restrain" means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining

the person. Restraint is "without consent" if it is accomplished by force, intimidation, or deception. Tex. Penal Code Ann. § 20.01(1)(A). "Restraint" is the actus reus requirement of "abduction," while the specific intent to prevent liberation is the mens rea requirement. *Laster v. State*, 275 S.W.3d 512, 521 (Tex. Crim. App. 2009); *West v. State*, 406 S.W.3d 748, 756 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

Appellant argues that his testimony conflicted with the complainant's account as to whether the complainant consented to being restrained. Testimony at trial showed that appellant restrained the complainant at gunpoint, tied her hands behind her back, placed a gag in her mouth, and a cover over her head. The complainant was then walked to the car at gunpoint by appellant and Falco and placed into the car, after which appellant drove away from the house. Police-officer testimony corroborated the complainant's testimony. Officer Wingo testified that when he walked to the passenger side of the car he saw that the complainant's hands were bound behind her back. Officer Carlson had to cut off the tie that bound the complainant's hands. Wingo also found a handgun and a baton in the front seating area of the car.

Appellant argues the evidence is insufficient to support his conviction because the complainant's testimony was based on a memory that was heavily influenced by drug use on the day of appellant's arrest. Appellant does not challenge that the complainant was restrained, but challenges her testimony that the restraint was without consent. Appellant admits he was using drugs at the time of the event. Appellant attacks the credibility of the complainant's testimony, not its sufficiency; determinations of witness credibility are solely within the province of the jury. *Cain v. State*, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997). The complainant's testimony, in conjunction with the officers' testimony, is sufficient

to show that appellant intended to restrain the complainant without her consent. *See Criff v. State*, 438 S.W.3d 134, 138 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (holding that inconsistent statements as to details of the offense and complainant's advanced age were not sufficient to overturn conviction as witness positively identified appellant as her attacker).

The complainant's testimony was sufficient to prove beyond a reasonable doubt that appellant knowingly abducted the complainant without her consent, and that appellant used a deadly weapon during the commission of the offense. The jury is the exclusive judge of the credibility of witnesses, the weight to be given to testimony, and the jury is the exclusive reconciler of conflicts in the evidence. *Marines v. State*, 292 S.W.3d 103, 106 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). The jury found that the complainant was a credible witness despite conflicting testimony from appellant that the complainant consented to being restrained. Viewing all the evidence adduced at trial in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We overrule appellant's first issue.

**B. The record does not support the trial court's order that appellant pay attorney's fees.**

In his second issue appellant argues the evidence is insufficient to support the trial court's order that he pay attorney's fees for the defense attorney appointed to him. The State agrees that appellant should not be ordered to pay attorney's fees in this proceeding and requests that we modify the judgment accordingly.

The trial court has the authority to order the reimbursement of appointed attorney's fees "[i]f the judge determines that a defendant has financial resources that enable the defendant to offset in part or in whole the costs of the legal services

provided." *See* Tex. Code Crim. Proc. Ann. art. 26.05(g). The defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of fees. *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010). We review the evidence in the light most favorable to the judgment when deciding whether the record contains legally sufficient evidence to support these elements. *Id.* at 557. Absent sufficient evidence, the defendant may not be ordered to pay attorney's fees. *See West v. State*, 474 S.W.3d 785, 795 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Appellant was found to be indigent before trial. By law, he was presumed to have remained indigent for the remainder of the proceedings unless a material change in his financial circumstances occurred. *See* Tex. Code Crim. Proc. Ann. art. 26.04(p). Our record does not reveal any evidence of changed financial circumstances, and the State concedes that there are none. Because there is no evidence that appellant has the financial resources or ability to pay for the costs of his appointed trial counsel, the reimbursement order is erroneous and should be deleted. We sustain appellant's second issue.

## CONCLUSION

We modify the trial court's judgment to delete the portion of the judgment that requires appellant to pay attorney's fees, and we affirm the judgment as modified.

/s/    Marc W. Brown
        Justice


Panel consists of Chief Justice Frost and Justices McCally and Brown.
Do Not Publish — Tex. R. App. P. 47.2(b).

9